## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LYLE LYERLA, d/b/a WILDEWOOD CONSTRUCTION, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 06-679-GPM |
| | ) |
| AMCO INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This matter is before the Court on cross motions for summary judgment (Docs. 27, 28). The Court held a hearing on April 23, 2007, and took the motions under advisement. For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment on its counterclaim.

### BACKGROUND

The parties have filed a joint stipulation of facts (*see* Doc. 24) which makes recitation of the background in this case relatively simple.

In March 2001, Scott Riddlemoser and Kathleen McNulty entered into a construction contract with Lyle Lyerla, d/b/a Wildewood Construction (hereinafter "Lyerla"). Pursuant to the terms of the contract, Lyerla was to construct a residential dwelling in Madison County, Illinois.

On January 24, 2002, Riddlemoser and McNulty filed suit against Lyerla alleging breach of the construction contract ("the underlying suit") (*see* Doc. 5, Att. 6). The suit alleged numerous

breaches including, among other things: failing to construct the building and other improvements pursuant to the plans and specifications attached to the insurance contract, failing to substantially complete the building and other improvements on or before July 31, 2001, failing to complete punch list items within 20 days of proper notice, failing to construct the building and other improvements in a good workmanship manner, and failing to correct all defects within seven days of notice.

Lyerla carried a Commercial General Liability ("CGL") policy (Policy No. ACP MCTO 7120302594) with AMCO Insurance Company ("AMCO") during the relevant time period. On March 15, 2002, Lyerla tendered notice of the case filed by Riddlemoser and McNulty to AMCO.  In a letter dated July 2, 2002, AMCO denied coverage; AMCO also denied that it had a duty to defend or indemnify Lyerla.  The underlying suit was ultimately settled by Lyerla for $53,000.

On June 8, 2006, Lyerla filed the instant lawsuit against AMCO in the Circuit Court of Madison County, Illinois, alleging breach of contract and violations of Section 155 of the Illinois Insurance Code (*see* Doc. 3, Att. 1).  AMCO removed the action to this Court on September 1, 2006, and filed a counterclaim against Lyerla shortly thereafter (*see* Doc. 8).  In short, the counterclaim seeks a declaration that the underlying claim is not covered by the policy mentioned above and, therefore, that AMCO had no duty to defend or indemnify Lyerla.

After the Court twice ordered AMCO to cure the allegations of federal subject matter jurisdiction in the notice of removal (*see* Docs. 7, 14), the Court concluded that federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332.[1]

---

[1]  Plaintiff Lyle Lyerla is a citizen of Illinois, Wildewood Construction is a sole proprietorship operated by Lyle Lyerla, and AMCO is an Iowa corporation with its principal place of business in Iowa.  The state court complaint seeks more than $100,000 in damages (including the cost of the underlying settlement and the cost of defending it).  Thus, the Court is

**ANALYSIS**

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must review the entire record and draw all reasonable inferences in the light most favorable to the non-moving party. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981).

The relevant facts are undisputed. The only issue is whether the CGL policy covers the underlying claim and whether AMCO had a duty to defend and indemnify Lyerla for the suit brought by Riddlemoser and McNulty.

The CGL policy held by Lyerla provides as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**\*\*\***

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any

---

satisfied that the amount in controversy requirement is met because it does not appear to a legal certainty that the claims are really for less than the jurisdictional amount. *See Smith v. American General Life and Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

> "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> ***
>
> b.    This insurance applies to "bodily injury" and "property damage" only if:
>
> 1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
> 2)    The "bodily injury" or "property damage" occurs during the policy period.

(Doc. 5, p. 22)

In *Viking Construction Management, Inc. v. Liberty Mutual Insurance Company*, 831 N.E.2d 1 (Ill. App. Ct. 2005), an Illinois Appellate Court examined the question of whether faulty construction is covered under a CGL policy.  The Court noted that the question is generally analyzed under one of the following approaches:

> (1) examination of the policy language, including the existence of an 'occurrence,' 'property damage,' or whether an exclusion applies; (2) application of the 'business risk,' 'ordinary and natural consequences,' or breach of contract doctrine; or (3) application of the 'economic loss' (no 'property damage') doctrine.

*Viking*, 831 N.E.2d 1, 7 (Ill. App. Ct. 2005) (citations omitted).  The *Viking* Court noted that the rationale for the second approach is "the requirement implicit in every liability insurance policy–specifically, that coverage is provided only for fortuitous losses."  *Viking*, 831 N.E.2d at 7 (citing John C. Yang, *No Accident: The Scope of Coverage for Construction Defect Claims*, Practising Law Institute, Litigation and Administrative Practice Course Handbook Series, 690 PLI/Lit 7, 36 (April 2003)).  In other words,

> [I]f a contractor uses inadequate building materials, or performs shoddy workmanship, he takes a calculated business risk that no damage will take place.  If damage does take place, it flows as an ordinary and natural consequence of the contractor's failure to perform the construction properly or as contracted [and] [t]here can be no coverage for such damage.

*Viking*, 381 N.E.2d at 7 (citing Yang, *supra*, at 36-37).

The parties agree in the Joint Stipulation of Uncontested Facts (Doc. 24, para. 3) that Riddlemoser and McNulty claimed that Lyerla breached their construction contract.  Indeed, the underlying complaint consists of only one count labeled "BREACH OF CONTRACT," attaches a copy of the construction contract, and talks repeatedly about breaches of it (*see* Doc. 5-7).

Illinois courts typically view allegations of breach of contract "as falling outside the scope of coverage of a general liability policy." *Viking*, 381 N.E.2d at 8.  Indeed, in *Viking*, the Court found that a CGL policy did not cover a claim for breach of contract.  Specifically, the First District noted,

> it is evident, upon review of the [underlying] complaint, that it is based entirely on breach of contract.  The only count in the complaint is entitled 'breach of contract.'  Moreover, all of the core allegations focus upon the obligations [the insured] owed to [the underlying plaintiff] under their agreement and [the insured's] failure to fulfill same.

*Id.* at 9.  Similar to *Viking*, the only claim in the underlying complaint was for breach of contract.

Moreover, there was no "occurrence" to trigger coverage under the policy.   As set forth above, the CGL policy applies to "bodily injury" and "property damage" only if the "bodily injury" or "property damage" is caused by an "**occurrence**" that takes place in the "coverage territory" (*see* Doc. 5, p. 22) (emphasis added).  The policy further defines "occurrence" as follows:

> 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(*see* Doc. 5-2, p. 11, para. 13).  Although the policy does not define the term "accident," cases have

defined this term as "an unforseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." *Viking*, 381 N.E.2d at 6; *see also State Farm Fire and Casualty Co. v. Tillerson*, 777 N.E.2d 986 (Ill. App. Ct. 2002). Under this definition, "there is no 'occurrence' when a subcontractor's defective workmanship necessitates removing and repairing work." *Viking*, 831 N.E.2d at 6 (citing 30 Tort & Insurance L.J. at 789). *See also Monticello Ins. Co. v. Wil-Freds Const., Inc.*, 661 N.E.2d 451 (Ill. App. Ct. 1996) (holding that construction defects did not constitute an "occurrence" within the meaning of a CGL policy).

Also missing from the underlying claim is "property damage" which might invoke coverage. Under the policy, "property damage" means:

> a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Doc. 5-2, p. 11).

Assuming that coverage exists under the policy, it goes on to exclude "property damage" under certain circumstances:

> 2.  Exclusions
>
> This insurance does not apply to:
>
> ***
>
> j.  Damage to Property
>
> "Property damage" to:
>
> ***

> 6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(*See* Doc. 5, p. 25)

Again, the underlying complaint does not identify physical injury to tangible property. Instead, it alleges that Lyerla and his subcontractors performed work improperly and incompletely. CGL policies are "intended to protect the insured from liability for injury or damage to the person or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses." *Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 489 (Ill. 2001); *see also Diamond State Insurance Co. v. Chester-Jensen Co.,* 611 N.E.2d 1083, 1091 (Ill. App. Ct. 1993).  Exclusions such as the one in AMCO's policy "are premised on the theory that liability policies are not intended to provide protection against the insured's own faulty workmanship or product, which are normal risks associated with the conduct of the insured's business.  The rationale frequently articulated is that liability insurance should not become a warranty or be converted into a performance bond." *Tillerson*, 777 N.E.2d at 992 (internal citations omitted).  In other words,

> [t]he risk intended to be insured is the possibility that the goods, products [,] or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. . . The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Indiana Insurance Co. v. Dezutti*, 408 N.E.2d 1275, 1279 (Ind. 1980) (quoting Henderson, *Insurance Protection for Products Liability & Completed Operations What Every Lawyer Should Know,* 50

Neb. L.Rev. 415, 441 (1971)); *see also Home Indemnity Co. v. Wil-Freds, Inc.*, 601 N.E.2d 281, 285 (Ill. App. Ct. 1992).

Lyerla's arguments to salvage his claims against AMCO are unavailing. First, Lyerla argues that the declaratory judgment counterclaim is untimely as a matter of law because AMCO waited until after the case was settled to file it, relying on *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122 (Ill. 1999).

In *Employers Insurance*, the Illinois Supreme Court noted that the general rule of estoppel "provides that an insurer which takes the position that a complaint *potentially alleging coverage* is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured." *Id.* at 1134 (emphasis added). But, as discussed above, the underlying lawsuit did not even potentially allege coverage under AMCO's policy, as it was well-settled in Illinois at the time that claims for breach of contract, *i.e.* faulty construction work, are not covered by a CGL policy. The Supreme Court noted in *Employers Insurance* that if a complaint potentially alleges coverage and an insurer fails to defend its insured under a reservation of rights or seek a declaratory judgment that there is no coverage, "and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Id.* at 1135. Again, AMCO is not raising policy defenses to coverage; its position all along has been that there simply is no coverage.[2]

---

[2] The Court notes that Lyerla's counsel asked the Court for leave to file a supplemental motion for summary judgment and memorandum in support after the April 23 hearing (*see* Doc. 35). The Court granted that request in part (*see* Doc. 36) and directed Lyerla to file a supplemental brief addressing a decision, *Country Mutual Ins. Co. v. Carr*, 867 N.E.2d 1157 (Ill. App. Ct. 2007), because Lyerla represented that this recent decision somehow affected the pending motions. Instead of filing a short brief addressing the *Carr* case as ordered, Lyerla's counsel filed a twenty page brief which essentially re-argued the issues. For good cause, AMCO's motion to strike the brief was granted (*see* Doc. 42), and the supplemental brief (Doc. 37) was stricken. Nonetheless, the Court has considered the *Carr* case. First, the Court notes that it was decided *before* the hearing in this case. More importantly, the case has no bearing on the

Lyerla next argues that it is not his work but the negligent work of a third party that caused the harm to Riddlemoser and McNulty and, thus, AMCO had a duty to defend him in the underlying lawsuit, relying on *Trovillion v. United States Fidelity and Guaranty Co.*, 474 N.E.2d 953 (Ill. App. Ct. 1985), *overruled on other grounds*, *Bonnie Owen Realty, Inc. v. Cincinatti Insurance Co.*, 670 N.E.2d 1182 (Ill. App. Ct. 1996), and *Prisco Serena Sturm Architects, Ltd. v. Liberty Mutual Insurance Co.*, 126 F.3d 886 (7th Cir. 1997).

Lyerla's reliance on these cases is misplaced.

> In *Trovillion*, the plaintiffs built a house as general contractors for James and Melissa Williamson. The Williamsons sued the plaintiffs for breach of contract because of their failure to erect the house in a good and workmanlike manner. The Williamsons' complaint alleged that the floor sagged because of inadequate support and that the floor in the bedroom area buckled and became detached from the walls. The walls and vinyl kitchen floor cracked. The complaint also alleged that the roof leaked and that the mortar and bricks in the exterior walls and the concrete footings cracked because of structural defects. The plaintiffs' insurance company initially undertook their defense under a reservation of rights but later withdrew its defense, citing certain policy exclusions.

*Tillerson*, 777 N.E.2d at 993 (internal citation omitted). As the appellate court noted in *Tillerson*, *Trovillion* is easily distinguishable. First, the insurer must have been unsure whether the claim was covered, because it initially undertook to defend the claim. Thus, it was not a case like the instant one where the insurer found that the underlying complaint did not even potentially allege coverage. More importantly, however, "*Trovillion* did not address the argument that the third party's damages were not caused by an occurrence or the argument that property damage was not alleged." *Tillerson*, 777 N.E.2d at 994.

---

issues before this Court. The underlying lawsuit in *Carr* involved claims of negligence, not breach of contract. It is easily distinguished. Moreover, a petition for leave to appeal to the Illinois Supreme Court is pending, and thus its precedential value is questionable.

Similarly, *Prisco* involved allegations of negligence, not breach of contract. *See Prisco*, 126 F.3d 886 (7th Cir. 1997). Moreover, the Illinois Supreme Court has rejected the Seventh Circuit's analysis in *Prisco*. *See Viking Construction*, 831 N.E.2d at 15.

Lyerla also argues that work by a third party (a subcontractor) is a specific exception within the policy. Section 3.06 of the construction contract recognizes that subcontractors were going to be employed by Lyerla because it required him to ensure that all subcontractors carried proper insurance. He then argues that because the loss arose out of work performed by a subcontractor, coverage is triggered under the policy. As discussed above, however, the Court must first find that coverage exists by virtue of the existence of an "occurrence" or "property damage." For the reasons stated above, there was no coverage in the first place, so it is unnecessary to delve into the policy's exclusions and the exceptions to them.

Lyerla also argues that the underlying complaint at a minimum potentially triggered policy coverage, and, for this reason, AMCO had a duty to at least defend Lyerla in the underlying suit. The Court disagrees. It is clear that the facts alleged in the underlying complaint do not even potentially bring the action into the scope of the CGL policy's coverage. As such, AMCO had no duty to defend. *See Del Posing v. Merit Ins. Co.*, 629 N.E.2d 1179, 1183 (Ill. App. Ct. 1994), *Trovillion*, 474 N.E.2d at 957-58.

Finally, the Court notes that Lyerla filed a motion for leave to file an amended complaint on July 24, 2007 (*see* Doc. 43). Now Lyerla claims that a recent decision by the Fifth District Illinois Appellate Court, *Beatty v. Doctors' Co.*, No. 5-06-0382, 2007 WL 1732816 (Ill. App. Ct. June 12, 2007) "affirms that an insurer owes a fiduciary duty to its insured." (Doc. 43, para. 3). Thus, Lyerla wants to amend the complaint to add claims for "Breach of Fiduciary Duty" and "Intentional Breach of Fiduciary Duty." AMCO promptly filed a response in opposition to the motion for leave (*see* Doc.

44).  As AMCO points out, the *Beatty* decision addresses the duty an insurer owes to its insured after the duty to defend has been triggered.  As discussed above, the duty to defend was never triggered in this case, as the underlying complaint was unambiguously a claim for breach of contract which never even potentially came within the scope of the CGL policy.  An amendment to the complaint at this point would be pointless and would serve only to cause AMCO to incur unnecessary additional expense.

## CONCLUSION

For the foregoing reasons, the motion for leave to file a first amended complaint (Doc. 43) and Plaintiff's motion for summary judgment (Doc. 27) are **DENIED**.  Plaintiff's claims are dismissed on the merits.

Defendant's motion for summary judgment (Doc. 28) is **GRANTED**.  The Court declares as follows: (1) there is no coverage under the policy, (2) Defendant does not owe Plaintiff a duty to defend or indemnify under the policy, (3) Defendant is not in any manner liable to Plaintiff under the policy for any claim made by Plaintiff, and (4) Defendant has not breached any duties it owed to Plaintiff or breached any contract with Plaintiff.

The Clerk of Court is **DIRECTED** to enter judgment accordingly.  Defendant is awarded its costs.

**IT IS SO ORDERED.**

DATED: 8/2/07

s/ *G. Patrick Murphy*
G. Patrick Murphy
Chief United States District Judge